Johnson et al. v. Ward.

# Swen J. Johnson et al.
## v.
# Samuel D. Ward, Receiver, etc.

1. Savings bank—A trustee for depositors.—A savings bank is any institution in the nature of a bank formed for the purpose of receiving deposits of money for the benefit of the depositors; such deposit and the produce thereof, except so much as shall be required for the necessary expenses attending the management of the bank to be returned to the depositors. A bank of such a character would be a mere trustee for the depositors, and its entire funds, whether made up of the deposits themselves, or of the interest, gains and accumulations thereof, would be trust funds held for the benefit of the depositors. The depositors, in a sense, become members of the corporation and its officers mere trustees for their benefit.

2. Joint-stock corporation doing a savings bank business—Not a trustee for depositors.—A joint stock corporation organized for the purpose of doing business on account of and for the profit of its shareholders, and where the gains and profits belong to the shareholders, although receiving savings deposits on which it agrees by contract with the depositor to pay a certain rate per cent. interest, is not a savings bank in the true sense of the term, and does not become a trustee for such depositor.

3. Rights of stockholders.—A bank organized as a joint stock company could not go into operation until possessed of capital stock as required by its charter, and it must be assumed that all who subscribed for and became owners of its stock, acquired all the rights which the law ordinarily gives to stockholders, and the funds, accumulations, and profits of the corporation were held by it in trust for the stockholders and not for the depositors, in the absence of trusts expressly assumed, or arising from special circumstances.

4. Relation between a bank and its depositors.—The ordinary relation existing between a bank and its depositors is that of debtor and creditor, and no fiduciary relation as to money deposited arises unless by virtue of some provision in the charter or by-laws of the corporation.

5. As to the funds in suit.—A by-law providing that "all savings deposited in this bank * * * * shall be invested in the stocks and obligations of the United States, or the State of Illinois, etc.," even if viewed in the light of an express contract, merely pledges the corporation to invest the savings deposited in certain specified securities. It entirely fails to declare whether such investments shall be made on account of the depositors, or on account of the corporation itself. Unaided by something *aliunde*, however, it does not fix the character of the funds deposited as trust funds, or create the relation of trustee and *cestui que trust*.

6. Savings deposit not a trust fund.—By other provisions in the by-laws of this corporation, a specified rate of interest was to be paid on savings deposits, and the bank became obligated for its payment, without regard to

whether the same was realized from the investment of the money by the bank; the depositor might under certain stated regulations withdraw his deposit, and this right existed without reference to the condition of the investment at the time. Had the securities been lost or destroyed without the fault or negligence of the bank, it would still have been liable to the depositors for the full amount of their deposits, and might have been compelled to pay the same. All these considerations inevitably lead to the conclusion that the true relation between the bank and its savings depositors was that of debtor and creditor.

7. EVIDENCE AS TO ORIGIN OF THE FUND IN SUIT.—The record in this case fails to disclose any evidence that the money used in the purchase of the securities in suit, actually arose from or was taken out of the savings deposit fund arising from the deposits made by original savings depositors. It also fails to show that any of the persons who were depositors at the time the bank failed, were such at the date of the execution of the deed of trust in question.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Mr. ELLIOTT ANTHONY, for appellants; contending that power to borrow money by a bank, is a necessary and inherent privilege, though not directly empowered so to do by its charter, cited Morse on Banking, 4; Partridge v. Badger, 25 Barb. 146; Beers v. Phœnix Glass Co. 14 Barb. 358; Curtis v. Leavitt, 15 N. Y. 9; Bank of Australasia v. Breillat, 6 Morris P. C. 152.

Corporations that have the power to borrow money have also the necessary power to give obligations for its re-payment, in any form not expressly prohibited: Curtis v. Leavitt, 15 N. Y. 9; Daniell on Negotiable Instruments, 287.

Corporations have all the powers of ordinary persons, as respects their contracts, to carry out the general purposes and objects of their creation, unless restricted by positive statute or by necessary implication: Weckler v. First Nat. Bank, 42 Md. 581; Littlewood v. Davis, 50 Miss. 403; Barry v. Vurchants Ex. Co. 1 Sandf. Ch. 280; City of Galena v. Corwith, 48 Ill. 423; Richmond R. R. Co. v. Richard, 26 Grattan, 83; Brice on Ultra Vires, 121; Curtis v. Leavitt, 15 N. Y. 53.

An obligation voluntarily entered into for a good consideration, is valid where it does not contravene the policy of the law and is not repugnant to some statute: Wolfe v. McClure, 79 Ill. 564; Pritchett v. The People, 1 Gilm. 525.

The burden of proof is upon the party seeking to impeach such contract: Brice on Ultra Vires, 41; Bulkly v. Derby Fishing Co. 2 Conn. 252; Allegheny City v. McClukan, 14 Penn. 8.

In corporate bodies, the powers of the board of directors are original and undelegated: Hoyt v. Thompson, 19 N. Y. 207; Morse on Banking, 15.

A private corporation, unless expressly prohibited, may execute promissory notes and mortgages, and give security for a debt: Reid v. Bradley, 17 Ill. 321.

And the corporation and nobody else, is judge of the exigencies. Any known assurance can be given: Daniell on Negotiable Instruments, 288; Ill. Cent. R. R. Co. v. Bloomington, 76 Ill. 447; Ottawa Plank Road Co. , v. Murray, 15 Ill. 336, Maher v. City of Chicago, 38 Ill. 266; Racine & Miss. R. R. Co. v. Farmers' Loan and Trust Co. 49 Ill. 331; Brice on Ultra Vires, 66.

The bank had the right to make the trust deed in question. Corporations are presumed to contract within their powers, and when a contract is not, on its face, necessarily beyond the scope of the power of the corporation, it will, in the absence of proof to the contrary, be presumed to be valid: Railway Co. v. McCarthy, 96 U. S. 267; Union Water Co. v. Murphy's Flats Fluming Co. 22 Cal. 620; Morris R. R. Co. v. R. R. Co. 29 N. J. Eq. 452; Whitney Ames Co. v. Barlow, 63 N. Y. 62; San Antonio v. McChoffey, 96 U. S. 315; Hitchcock v. Galveston, 96 U. S. 351; Maher v. Chicago, 38 Ill. 266.

Where the contract has been in good faith fully performed; and the corporation has received the benefit, it cannot avail itself of the defense of *ultra vires:* *Ex parte* Chippendale. D. G. M. & G. 19; Bradley v. Ballard, 55 Ill. 413; West v. Madison Co. Agr'l Board, 82 Ill. 205.

As to the power of directors to act for the bank: West v. Madison Co. Agr'l Board 82 Ill. 205; Miller v. McManis, 57 Ill. 126; Darst v. Gale, 83 Ill. 136; Chicago Building Soc. v. Crowell, 65 Ill. 453; Aurora Agr'l etc. Soc. v. Paddock, 80 Ill. 263; Bradley v. Ballard, 55 Ill. 413; Badger v. Batavia Co. 70 Ill. 302; Holder v. L. B. & Miss. R'y Co. 71 Ill. 106.

A bank may be bound by any undertaking entered into on its behalf, by any of its officers provided they have been thereto duly authorized: Morse on Banking, 11, 105; Angell & Ames on Corporations, 153; 1 Daniell on Negotiable Instruments, 288; 2 Kent Com. 280.

Where a corporation receives the benefit of money loaned, it cannot avoid payment by denying its authority to contract the loan: Darst v. Gale, 83 Ill. 136; Ottawa Plank Road Co. v. Murray, 15 Ill. 336; Sackett's Harbor Bank v. Codd, 18 N. Y. 242; Oneida Bank v. Ontaria Bank, 21 N. Y. 490; McCracken v. San Francisco, 16 Cal. 591; Grogan v. San Francisco, 18 Cal. 590; Premental v. San Francisco, 21 Cal. 351; Chicago Building Soc. v. Crowell, 65 Ill. 453; Brice on Ultra Vires, 608; Parish v. Wheeler, 22 N. Y. 503; Bissell v. M. S. R. R. Co. 22 Ill. 258; Hazelhorst v. Savannah, R. R. Co. 43 Ga. 54; Bradley v. Ballard, 55 Ill. 413; Miller v. McManis, 57 Ill. 126; DeGraff v. American Linen Thread Co. 21 N. Y. 128; Gas Co. v. San Francisco, 9 Cal. 453; Railroad Co. v. Howard, 7 Wall. 413; Tracy v. Talmage, 14 N. Y. 162; Labriskie v. C. C. & C. R. R. Co. 23 How. 381; Cary v. Cleveland etc. R. R. Co. 29 Barb. 35; McClure v. Manchester R. R. Co. 13 Gray 124; Ill. Cent. R. R. Co. v. Bloomington, 76 Ill. 447.

Where an act of the directors is in excess of their authority, a shareholder knowing it must dissent within a reasonable time, or his assent will be presumed: Watt's Appeal, 78 Pa. St. 370; Curtis v. Leavitt, 15 N. Y. 66; Parish v. Wheeler, 22 N. Y. 494; Steam Nav. Co. v. Weed, 17 Barb. 378; Silver Lake Bank v. North, 4 Johns. Ch. 370; Cluster Glass Co. v. Dewey 16 Mass. 94; Tracy v. Talmage, 14 N. Y. 162.

A party dealing with a corporation has a right to presume that it acts according to its charter: Akin v. Blanchard, 32 Barb. 527; Parish v. Wheeler, 22 N. Y. 494.

The relation of a depositor to a bank is that of creditor and debtor: Ketchum v. Bank of Commerce, 19 N. Y. 513; Chapman v. White, 2 Seld. 417; Curtis v. Leavitt, 15 N. Y. 52; Morse on Banking, 25; *In re* Franklin Bank, 1 Paige, 249; Com'l Bank of Albany v. Hughes, 17 Wend. 94; Graves v. Dudley, 20 N. Y. 80; Foley v. Hill, 2 H. L. Cas. 39; Croskill

v. Bower, 32 Beav. 86; Carr v. Carr, 1 Minn. 541; Bullard v. Randall, 1 Gray, 605; Downer v. Phœnix Bank, 6 Hill, 297.

The money deposited becomes the property of the depositary: Morse on Banking, 25; Brahm v. Adkins, 77 Ill. 263; Carroll v. Cone, 40 Barb. 220; Clark v. Titcomb, 42 Barb. 122.

The bank was not trustee for the depositor; it was a mere bailment:    Morse on Banking, 28; Steele Adm'r v. Clark, 77 Ill. 471; Perry on Trusts, 37; Keem v. Collier, 1 Met. 415; *In re* Franklin Bank, 1 Paige, 249; Story on Bailments, § 88; Marine Bank v. Rushmore, 28 Ill. 463; Boyden v. Bank of Cape Fear, 65 N. C. 15; Tinkham v. Heyworth, 31 Ill. 519; Edwards on Bailments, 66; Marine Bank v. Chandler, 27 Ill. 525.

As to by-laws of a corporation, their functions, and contracts made under them: Field on Corporations, § 307; Flint v. Pierce, 99 Mass. 68; Mellen v. Whipple, 1 Gray, 317; Field v. Crawford, 6 Gray, 116; Dow v. Clark, 7 Gray, 198; Fay v. Noble, 12 Cush. 1; Royal British Bank v. Turquand, 5 E. & B. 248; Hoyt v. Thompson, 19 N. Y. 207; City of Ottawa v. Maxey, 20 Ill. 413; Mec. & F. Bank v. Smith, 19 Johns. 115; Gallalen v. Bradford, 1 Bibb, 209; Morse on Banking, 52.

As to estoppel of a corporation: Chicago Building Soc. v. Crowell, 65 Ill. 453; Hough v. Cook Co. Land Co. 73 Ill. 23; Bradley v. Ballard, 55 Ill. 413; Wilson Sewing M. Co. v. Boyington, 73 Ill. 534; Aurora, etc. Soc. v. Paddock, 80 Ill. 263; Hoyt v. Thompson, 19 N. Y. 218; Allegheny City v. McClurken, 41 Penn. 89; Maher v. City of Chicago, 38 Ill. 266; Angell & Ames on Corporations, § 256; Supervisors v. Schenck, 5 Wall. 581; Pendleton v. Arry, 13 Wall. 305; State v. Trustees, 8 Ohio St. 403; State v. Van Horne, 7 Ohio St. 331; Barrett v. County Court, 44 Mo. 199; City of Chicago v. Wheeler, 25 Ill. 478; Bank of Middlebury v. Rut. & Wash. R. R. Co. 30 Vt. 159; Bradstreet v. Bank of Royalton, 42 Vt. 128; Brice on Ultra Vires, 453; Despatch Line v. Bellamy Mfg. Co. 12 N. H. 205; Mors v. Averill, 10 N. Y. 453; Olcott v. Tioga R. R. Co. 27 N. Y. 546; Ottawa Plank Road Co. v. Murray, 15 Ill. 336; Bissell v. M. S. R. R. Co. 22 N. Y. 272.

An unauthorized act may be ratified:    Morse on Banking, 80; Hooker v. Eagle Bank, 30 N. Y. 83.

The receiver stands in place of the corporation: High on Receivers, 200; Curtis v. Leavitt, 15 N. Y. 51; Morse v. Chapman, 24 Ga. 249; Devendorf v. Beardsley, 23 Barb. 656; Hyde v. Lynde, 4 N. Y. 387.

When securities are pledged to secure a debt, the pledgee acquires a special property in them: White v. Platt, 5 Denio, 269; Casey v. Cavaroc, 96 U. S. 476; Casey v. Schneider, 96 U. S. 496.

Corporations are liable for the frauds of their agents when committed in the course of their employment: Phil. R. R. Co. v. Quigley, 21 How. 202; Aldrich v. Press Printing Co. 9 Minn. 133.

The decree is contrary to the decisions of the Supreme Court of this State: Bradley v. Ballard, 55 Ill. 413; Aurora etc. Soc. v. Paddock, 80 Ill. 263; Chicago Building Soc. v. Crowell, 65 Ill. 453; West v. Madison Co. Agr'l Board, 82 Ill. 205; Badger v. Batavia Paper Co. 70 Ill. 302; Darst v. Gale, 83 Ill. 136; Germania Ins. Co. v. Hutchberger, 1 Chicago Law Jour. 63.

Mr. W. C. GOUDY, for appellants; contending that the bank had power to borrow money in the usual course of business, cited Curtis v. Leavitt, 15 N. Y. 51; Planter's Bank v. Sharp, 6 How. 323; Brice on Ultra Vires, 122.

A bank authorized to take negotiable paper can assign and transfer it: McIntyre v. Preston, 5 Gilm. 38; Planter's Bank v. Sharp, 6 How. 323.

The relation between the bank and its depositors was that of debtor and creditor: Bank for Savings v. Collector, 3 Wall. 513; Morse on Banking, 25; Tinkham v. Heyworth, 31 Ill. 519; Marine Bank v. Fulton Bank, 2 Wall. 252; Thompson v. Riggs, 5 Wall. 678; Ketcham v. Bank of Commerce, 18 N. Y. 513; Chapman v. White, 6 N. Y. 412; *In re* Franklin Bank, 1 Paige, 249.

The bank having the power to dispose of the notes and mortgages, the persons who took them were not obliged to see how the money was used: Perry on Trusts, §789.

Messrs. HOYNE, HORTON & HOYNE, for appellee; insisting

that the money used in creating the fund in question, was the money of the depositors, misappropriated by the bank, and was a trust fund that could be followed, cited Penwell v. Defell, 4 DeGex M. G. 388; 1 Story's Eq. § 121; Sheldon v. Harding, 44 Ill. 68; Whiteside v. Warner, 20 Vt. 425; Moses v. Murgatroyd, 1 Johns. Ch. 119; Bottsford v. Burr, 2 Johns. Ch. 405; Wray v. Steele, 2 Ves. & B. 388.

Upon the question of *ultra vires:* Field on Corporations § 257; 7 Cow. 485; 2 Wend. 452; Parish v. Wheeler, 22 N. Y. 494.

Courts of equity will restore to the *cestuis que trust* not only the fund, but all profits acquired by the trustee: Davone v. Fanning, 2 Johns. Ch. 251; Hood v. Warner, 5 Paige Ch. 655; Michmund v. Girod et al. 4 How. 553; Gilman, etc. R. R. Co. v. Kelly et al. 77 Ill. 426; Paley on Agency, 51.

BAILEY, J.   The Merchants', Farmers' and Mechanics' Savings Bank was incorporated as a joint stock banking corporation, by a special act of the General Assembly, approved and in force February 22nd, 1861.   The corporation was required by the act to have a capital stock of fifty thousand dollars, with power to increase the same to any sum not exceeding five hundred thousand dollars; such stock to be divided into shares of fifty dollars each, twenty per cent. thereof to be paid in by the stockholders at the time of subscribing for the same, and the remainder when called for by the corporation.   Power was given to the directors to declare the shares of any stockholder forfeited to the corporation for non-payment of installments thereon; and an individual liability to the depositors and creditors of the bank was imposed upon the stockholders to an amount equal to the amount of stock held by them respectively. The third and fourth sections of the act of incorporation are as follows:

"§ 3.   The said corporation shall be authorized to receive money from any person or persons who may wish to deposit the same.   Married women and minois may, in their own names, deposit money with said corporation, and receive certificates of deposit in their own names, and which deposits shall be subject to their order only.   All deposits of money shall be

used and improved in a manner not inconsistent with the laws of this State, and any rate of interest, not exceeding that allowed by law, shall be paid for such deposits.

" § 4.   The said corporation may accept and execute all such trusts, whether fiduciary or otherwise, as shall or may be committed to it by any person or persons, or by the order of any court or tribunal in the · State of Illinois; may make such special regulations in reference to trust funds, deposits or savings as shall best aid the depositors and parties interested, by accumulating and increasing the same, allowing and receiving such rate of interest therefor, not greater than hereinbefore mentioned, as may be agreed upon; may grant and purchase annuities, issue letters of credit and other commercial obligations; *provided* the same shall not be in the similitude of bank notes or other evidences of debt, designed to circulate as money. The said corporation shall have power to loan money, to receive money on deposit and pay interest therefor, and to loan money, at any rate of interest not exceeding ten per cent. per annum, or to discount in accordance with bank usage; and in the computation of time thirty days shall be a month, and twelve months a year; and take such security as the directors may see proper; may take stock in other corporations; may buy and sell exchange, bills, notes, bonds and other securities, and may have and hold coin and bullion."

In the year 1862 the corporation was organized, with a capital stock .of fifty thousand dollars, and adopted a code of by-laws.   The capital stock seems to have been afterwards increased to one hundred thousand dollars.   The by-laws provided, among other things, that the accounts of savings deposits should be kept upon the same system generally used by the savings banks in the eastern cities, with such improvements as the board of directors might from time to time deem expedient, and that a book or certificate should be given to each depositor of savings, in which each sum deposited should be entered, which book or certificate should be the voucher of the depositor for the amount of his deposit, and should be by him produced upon withdrawing any portion of the deposit, that the same might be entered thereon.   No such depositor was permitted

as a matter of right to withdraw more than ten per cent. of his deposit in any one month without thirty days' previous notice, or more than twenty per cent. without sixty days' notice; and a provision was made for declaring and paying interest semi-annually at the rate of six per cent. per annum on all sums of five dollars and upwards, which had been on deposit for the preceding six months, and a ratable proportion on such sums as had been on deposit for the preceding three months. Depositors of savings were required, on making the first deposit, to place their names on a signature book to be kept for that purpose, containing a copy of all by-laws and regulations having reference to savings deposits or depositors, and it was provided that every person signing said book should be deemed to have assented thereto. Among the by-laws relating to savings deposits was the following:

" All savings deposited in this bank over and above such sums as may be expedient to reserve for immediate use, as provided in the charter and these by-laws, shall be invested in the stocks and obligations of the United States, or the State of Illinois, or in the evidences of the indebtedness of the city of Chicago, or in bonds and mortgages on real estate in the city of Chicago, or upon real estate of double the value of the amount loaned, clear of all incumbrances, or upon such securities as the board of directors may select, in accordance with the provisions of the charter, or such as are used by the oldest and most reliable savings banks in the United States."

The bank after its organization, in 1862, commenced business and continued in operation until September 19th, 1877, when it suspended, and became insolvent. At first it did a general banking business of all kinds, except issuing bills for circulation, as money. At a later period it discontinued most of its business of receiving deposits on which no interest was paid, and general commercial business, and confined itself mainly, though not exclusively, to a savings business and special trusts. During the entire period of its operations, all moneys received by the bank were mixed, and no separate fund was kept. Moneys received from savings depositors went into the same fund with the previous accumulations of the bank, and with

moneys received from other depositors, from interest on loans, and from all its other sources of income. From this common fund, money was used for all the purposes of the bank. Taxes, expenses, interest, checks and certificates of depositors were all paid from it, and moneys were drawn from it for investments and loans.

On the 23d day of December, 1873, the bank established as a part of its business an investment department, for the avowed purpose " of furnishing to persons desiring to avail themselves of its benefits, a higher rate of interest than is paid by savings banks upon savings deposits, and, at the same time, furnishing to such persons real estate or other security for the money to be invested by them." This department was organized in accordance with the following scheme: Promissory notes held by the bank, and which it had previously taken for money loaned by it to the makers thereof, and trust deeds on real estate in Chicago securing the same, to the amount of one hundred thousand dollars, were assigned to, and placed in the hands of George Chandler as trustee, to be held by him in trust as security to those who might invest their money in said department. Provision was made for the transfer to said trustee of further securities whenever the amount of investments should so require. The bank on its part, undertook to receive in said department, all sums of money of one hundred dollars and upwards, delivered to it for investment, and issue therefor to the depositors or investors, investment certificates, bearing interest at the rate of seven and thirty-hundredths per cent. per annum, payable quarterly. By the terms of these certificates, the holder was given the right at any time to present the same to the trustee in sums of five hundred dollars or more for exchange or redemption. If he desired to exchange, he could surrender his certificates and receive in lieu thereof, some one or more of the securities held by the trustee as nearly as might be equal, in principal and accrued interest, to the amount of the principal and accrued interest of his certificates, receiving or making payment, as the case might be, of the difference between them. If he desired to have his certificates redeemed in money, he was required to file the same with the trustee, taking his receipt

therefor, and the same were payable by the trustee in the order of presentation, out of the funds then in his hands, or which might next come to his hands from the collection of the notes and securities pledged for the redemption of said certificates.

No certificates were to be issued until countersigned by the trustee, and he was restricted to countersigning an amount equal to the principal of the securities held by him. The trustee was empowered to collect the interest and principal of the securities in his hands as the same should mature, by proceedings in his own name at law or in equity, or to convert the securities and apply the proceeds to the redemption of certificates, or to return and re-transfer the same to the bank upon receiving, in place thereof, other notes and securities of equal value.

The terms of said trust were fully set forth and declared in a deed of trust executed by the bank to Chandler, and acknowledged, and recorded in the office of the recorder of Cook county.

The evidence shows that during the year next following the establishment by the bank of its investment department, about eighty thousand dollars were received by it for investment in this manner, and certificates of investment issued therefor. The entire amount of money received and certificates issued, down to the time the bank failed, was about one hundred and seventy thousand dollars. Of this amount, ninety-three thousand three hundred dollars of certificates were outstanding at the date of the failure, and about one hundred thousand dollars of securities were then remaining in the hands of the trustee. A large portion of the securities originally assigned to the trustee had been collected, negotiated, or returned, and others substituted therefor, so that when the bank suspended, less than ten thousand dollars of the original securities remained in his hands.

After the failure of the bank, a bill was filed in the Circuit Court of Cook county for the purpose of winding up its affairs, and in that proceeding the appellee was appointed receiver of said corporation. The receiver in taking possession of its effects,

got into his hands certain of the mortgages and deeds of trust assigned to Chandler, and other papers belonging to him, as trustee, and afterwards made a written demand on Chandler to surrender to him all notes, deeds of trust, and other securities in his possession, as trustee, claiming to be entitled thereto as such receiver, and claiming the right to collect and distribute the same *pro rata* among all the creditors of said bank. Chandler thereupon filed a bill against the receiver in his capacity as trustee, joining with him Johnson, one of the appellants, who was a holder of one of said investment certificates, praying that the receiver be enjoined from taking and receiving said securities, and from mingling them with the general assets of the bank, and distributing the proceeds thereof among the general creditors. While this bill was pending, Chandler came into court and resigned his position of trustee, whereupon the receiver was by the court appointed his successor in trust, with directions to keep all the moneys and securities delivered to him by Chandler, separate and distinct from the other moneys and assets in his hands, as receiver, until the final adjudication of the suit; and it was further ordered that the cause proceed against the receiver in the name of Johnson. The receiver thereupon answered the bill and filed a cross-bill, praying the court to direct how the proceeds of the promissory notes and securities claimed to be held in trust should be disposed of. Afterwards, by leave of the court, an amended and supplemental bill was filed on behalf of all the certificate holders, by Johnson and the other appellants, they all being holders of investment certificates, praying that appellee, as successor in trust of Chandler, be required to collect the securities received from Chandler, and apply the same to the payment of said certificates until the same should be paid in full.

Issues were formed upon said original, amended, supplemental and cross-bills, by answers and replications, and the cause being heard on the pleadings and proofs, the court below entered its decree, finding, in substance, that the securities held by Chandler were purchased by funds derived from savings deposits; that under the charter and by-laws of said bank, all the savings deposits made by the several depositors in said

bank were received by the bank in trust for the depositors; that the transfer of said securities to Chandler was in violation of said trust; " and that as to all of said savings depositors there exists in equity, in their favor, a prior lien, first in point of time as well as in right, to have said securities sold, collected, and paid into the general savings fund, to be equally distributed among the savings depositors of said bank, in proportion to their several amounts, and the holders of said so-called invest- ment certificates." It was thereupon decreed that the original, amended and supplemental bills be dismissed for want of equity, and that said trust deed to Chandler be set aside, and held to be null and void, as against the savings depositors of said bank, and that the proceeds of the securities thereby assigned to Chandler be distributed among the savings deposi- tors and the holders of the investment certificates as might thereafter be ordered by the court. To reverse this decree the record has been brought to this Court by appeal.

No question is made in the case as to the power of this bank under its charter to borrow money, and to execute to the lender therefor security in any form not prohibited by law, or to pledge as security for such loans any property of which it had the exclusive ownership both legal and beneficial. Such power is expressly conceded by counsel for appellee. Nor is any ques- tion made as to the validity of the trust deed to Chandler apart from the equitable rights claimed by the savings depositors in the securities thereby transferred. The questions presented for our consideration are whether, under the facts disclosed by the record, the bank held these securities in trust for the savings depositors, and whether such trust, if it existed, precluded the bank from disposing of or pledging them in the manner attempted to be done by the deed of trust.

In resolving these questions, it may not be improper to briefly notice the legal relations existing between this bank and its savings depositors. It may be observed that the bank was not a savings bank in the strict sense of that term. It was a *joint stock corporation*, organized for the purpose of doing business on account of and for the profit of its shareholders, and conse- quently its gains and accumulations belonged to them, and

not to its depositors. Mr. Grant defines a savings bank as follows:

"A savings bank is defined to be any institution in the nature of a bank formed for the purpose of receiving deposits of money *for the benefit of the persons depositing;* to accumulate the produce of so much thereof as shall not be required by the depositors, their executors and administrators, at compound interest, and to return the whole, or any part of such deposit, *and the produce thereof,* to the depositors, their executors or administrators, deducting out of such produce so much as shall be required for the necessary expenses attending the management of such institution, *but deriving no power whatsoever from any such deposit or the produce thereof."* Grant on Banking, 614.

Manifestly a bank of the character thus described would be a mere trustee for the depositors, and its entire funds whether made up of the deposits themselves, or of the interest, gains, and accumulations thereof, would be trust funds held for the benefit of the depositors. The profit to the depositor would be not a rate of interest fixed and determined by contract between him and the bank, but his distributive share of the whole net profits and accumulations of the institution, whatever they might be. The depositors, in a sense, would become members of the corporation, and the corporation and its officers would be mere trustees for their benefit.

The bank under consideration, however, as we have seen, was organized and established upon a wholly different principle. It could not go into operation until possessed of a stock capital of at least fifty thousand dollars. It must then be assumed that all who subscribed for and became the owners of its stock, acquired all the rights which the law ordinarily gives to stockholders in joint stock corporations. The funds, accumulations, and profits of the corporation were held by the corporation in trust for them, and not for the depositors, at least in the absence of trusts expressly assumed, or arising from special circumstances. Especially is this true when the individual liability to the depositors and creditors of the bank imposed by the charter upon the stockholders is considered. It cannot be

presumed that the law intended that the stockholders should pay in their money and incur this heavy liability, *merely* for the benevolent purpose of enabling depositors to invest their surplus funds, so as to be secure against loss, and to reap at the same time all the profits of such investments.

Such being the character of this banking corporation, we are unable to perceive how, except so far as their standing may have been modified by express provisions of the charter, or of the contract between the parties, the savings depositors did not stand upon precisely the same footing with other depositors not in the savings department. There was nothing in the nature of these deposits distinguishable from those of general depositors. The distinction, wherever one exists, must be derived, not from the nature of the deposit itself, but from the character and objects of the corporation receiving it, or the terms of the contract under which it is received.

The law is well settled that the ordinary relation existing between a bank and its depositor is simply that of debtor and creditor. The original and every subsequent deposit by the customer is, in strict legal sense, a loan by the customer to the bank, and every payment by the bank to, or on account of, the customer is, *pro tanto*, a re-payment of the loan.   Morse on Banking, 25.   Money thus deposited at once becomes the proper money of the bank, which it may deal with and dispose of as it sees fit; and no fiduciary relation of any nature whatsoever arises between the parties.

In the present case, however, the moneys belonging to the savings department of this bank, are sought to be impressed with the character of trust funds, by virtue of the provisions of the charter and by-laws of the corporation.   We fail to find anything in the charter from which such a result follows. That, it is true, gives the corporation power to accept and execute trusts, but it nowhere declares that deposits, or any class of deposits, shall be deemed trust funds.

Is such character then given them by the by-laws?   In determining this question, all the provisions of the by-laws relating to savings deposits should be considered.   It cannot be conceded that, as to these funds, the relation of debtor and

creditor, and of trustee and *cestui que trust*, existed at the same time.   It must have been one or the other, *not both.*

It is insisted that the section of the by-laws above quoted at length, conclusively fixes the character of these deposits as trust funds.   That section, even if viewed in the light of an express contract, merely pledges the corporation to invest all savings deposited with the bank not needed for immediate use, in certain specified classes of securities.   It entirely fails, however, to declare whether such investments shall be made on account of the depositors or on account of the corporation itself.   It is susceptible of either construction.   It may be regarded, if it should appear *aliunde*, that the funds are trust funds, as an agreement to invest them for the benefit of the usees.   If the contrary appears, then it may be interpreted as a pledge or assurance of the judicious manner in which the bank would invest its own funds so as to be able at all times to pay back to its customers their deposits.   After giving this section the full force properly belonging to its entire language, we think the question of the real character of these savings deposit funds still unanswered.

There are other provisions of the by-laws, however, which we think may contribute to a correct solution.   As we have seen, the by-laws stipulated for the payment of interest at fixed periods, to wit, semi-annually, and at a definite and fixed rate, to wit, six per cent. per annum.   If the deposit had been a trust, the usee would have been entitled to his distributive share of the actual profits arising from the investment of the trust funds, and no more.   By the agreement, however, the bank undertook to pay a definite rate of interest, whether realized by it or not.   Another provision of the by-laws gave the depositors the right, after certain notice, to withdraw their entire deposits. This right existed without reference to the condition of the investment at the time.   The fund may have been in the form of mortgages on real estate not yet due; still the bank, notwithstanding, was bound to pay the money.   It cannot be doubted that, under these circumstances, the depositor, after giving the required notice, might have proceeded at law and collected his deposit and all interest due, by action of debt, and that he would

not have been compelled to resort to a court of equity to reach the deposit fund itself. Had the securities been lost by fire, by inevitable accident or theft, without fault or negligence on the part of the bank, it will scarcely be questioned that the bank would still have been liable to the depositors for the full amount of their deposits, and might have been compelled to pay the same if in possession of resources sufficient for that purpose.

These considerations inevitably lead to the conclusion that the true relation between the bank and its savings depositors was that of debtor and creditor, and that the funds arising from the savings deposits were the absolute property of the bank. It follows that the bank had full power to negotiate or pledge any of its securities obtained by loaning said funds, and that the deed of trust to Chandler was valid.

But even were this otherwise, we think the evidence in the record fails to support the decree. The decree finds, as a matter of fact, that the securities transferred to Chandler "were originally purchased by and with substantially the funds supplied by, derived from and actually taken out of the savings deposit fund, arising from the several deposits made by original savings deposit customers of said bank, under its charter and by-laws."

It should be observed that for a number of years prior to December 23d, 1873, the date of the Chandler trust deed, the bank had been receiving savings deposits, and may so far as appears have then accumulated profits from that business. It is manifest that such profits were in any event the property of the bank and its stockholders, and not of the then existing savings depositors.

But we fail to find any evidence from which it can be determined with sufficient certainty that the securities transferred to Chandler December 23d, 1873, or those afterwards placed in his hands, were derived from the savings deposit fund. The evidence fails to satisfactorily disclose the amount of resources possessed by the bank December 23d, 1873, or at any subsequent date, up to the time the last of these securities was passed over to Chandler.

Rush W. Chambers, a book-keeper in the bank from January

2d, 1869, to the date of the failure, was the only witness examined on this subject. After stating that during the period of his service the principal business of the bank was receiving savings deposits, loaning money, and collecting interest on its loans, this witness being asked to state the consideration for the notes and securities placed with Chandler, as trustee, answered: "There was no distinctive money there. It was all in one fund, no matter from what source. The resources of the bank were savings deposits and their accumulations and interest on loans. The notes and mortgages in Mr. Chandler's hands were purchased by moneys of the bank, and they came out of the general money, and there was no other means of getting any money. The profits of the bank were from interest on money loans." This evidence, we think, is far too vague and indeterminate to satisfy us that these securities were the product of the money deposited by those who at the time were savings depositors. So far as appears, the assets of the bank, at that time, may have been largely in excess of the total amount of such deposits. Definite proof on this subject was presumably within the control of the receiver, and should have been produced.

It may further be observed that the evidence wholly fails to show that any of the persons who were savings depositors at the time of the failure of the bank were such at the date of the execution of the deed of trust to Chandler. So far as appears, every dollar owing to savings depositors at the last named date, may have been paid before the bank failed. As against all depositors of a date subsequent to the Chandler trust deed, the holders of the investment certificates have a lien on the securities held by Chandler, prior in point of time as well as in right. We think, therefore, the evidence fails to make a case upon which the rights of the certificate holders can be challenged.

In view of the conclusions above announced, the decree must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Decree reversed.